**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re Application of BlueBay Asset
Management LLP, GML Capital LLP, IVO
Capital LLP, Pala Assets Holdings Limited,          CIVIL ACTION NO. 1:20-mc-233
RAI Investments PTE LTD., Sancta Capital
Partners LP, Sandglass Opportunity Fund, LP,
Sandglass Petrus Opportunity Fund, LP, and VR
Global Partners, L.P. for an Order Pursuant to
28 U.S.C. § 1782 to Conduct Discovery from
Fitch Ratings Inc. and Etihad Airways P.J.S.C.
for Use in Foreign Proceedings.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN**
**ORDER PURSUANT TO 28 U.S.C § 1782 TO CONDUCT DISCOVERY FROM FITCH**
**RATINGS INC. AND ETIHAD AIRWAYS P.J.S.C. FOR USE IN FOREIGN**
**PROCEEDINGS**

K&L GATES LLP
Matthew J. Weldon
Luke E. Steinberger
599 Lexington Avenue
New York, New York 10022

*Attorneys for Petitioners BlueBay*
*Asset Management LLP, GML*
*Capital LLP, IVO Capital LLP, Pala*
*Assets Holdings Limited, RAI*
*Investments PTE LTD., Sancta*
*Capital Partners LP, Sandglass*
*Opportunity Fund, LP, Sandglass*
*Petrus Opportunity Fund, LP, and*
*VR Global Partners, L.P.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ......................................................................................................3

 A. The Notes, and the Alitalia Debt Acquired With the Proceeds From the Notes .............................................................................................................................3

 B. The Debt Assumption Agreement ........................................................................4

 C. Alitalia's Insolvency Proceedings and Default on the Alitalia Debt ...................4

 D. The Fitch Credit Rating ...........................................................................................5

 E. Applicant's Requests For The Debt Assumption Agreement Have Been Ignored ........................................................................................................................6

 F. Applicant's Intended Use Of The Debt Assumption Agreement ..........................6

ARGUMENT ............................................................................................................................7

 A. The Requested Discovery Meets The Statutory Requirements of 1782(a) ..............7

  i. Respondents Are Found In This District ...................................................8

  ii. The Discovery Sought Is "For Use" In Aid OF A Foreign Proceeding ..............................................................................................9

  iii. Applicant Is An Interested Party ...............................................................11

 B. The Discovery Sought Is Not Privileged .............................................................13

 C. The Discretionary Factors Weigh in Favor of Issuing Discovery ........................13

  i. The Respondents Are Not Within The Foreign Court's Jurisdiction ................................................................................................13

  ii. The Foreign Tribunals Are Receptive To Federal Court Assistance Via Section 1782 ...................................................................14

  iii. The Application Does Not Circumvent Foreign Proof-Gathering Restrictions ...............................................................................................14

  iv. The Requested Discovery Is Not Unduly Burdensome ...........................15

CONCLUSION.......................................................................................................................15

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Accent Delight Int'l LTd.*,
    869 F.3d 121 (2d Cir. 2018).................................................................................9

*Akebia Technologies, Inc. v. FibroGen, Inc.*,
    793 F.3d 1108 (9th Cir. 2015) ............................................................................12

*In re Application of Chevron Corp.*,
    709 F.Supp.2d 283 (S.D.N.Y. 2010)....................................................................7

*In re Application of Consellior SAS*,
    No. 16-mc-00400, 2017 WL 449770 (Feb. 2, 2017, S.D.N.Y.) ......................8, 15

*In re Application of Inversiones y Gasolinera Petroleas Valenzueala*,
    2011 WL 181311 (S.D. Fla. Jan. 19, 2011) ..........................................................8

*In re Application of OOO Promnefstroy*,
    2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ......................................................14

*Brandi–Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir.2012).....................................................................................7

*In re Children's Investment Fund Foundation (UK)*,
    363 F. Supp. 3d 361 (S.D.N.Y. 2019)..................................................................12

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).............................................................................................9

*Deposit Insurance Agency v. Leontiev*,
    2018 WL 3536083 (S.D.N.Y. July 23, 2018) ......................................................10

*In re Dickson*,
    No. 20-mc-51, 2020 WL 550271 (Feb. 4, 2020, S.D.N.Y.) .............................7, 9

*In re Euromepa S.A.*,
    51 F.3d 1095 (2d Cir. 1995)...........................................................................14, 15

*In re Fagan*,
    2019 WL 8011742 (C.D. Cal. May 10, 2019) .....................................................11

*In re Furstenberg Finance SAS*,
    2016 WL 10707012 (S.D. Fla. July 27, 2016)....................................................12

*In re Gorsoan*,
    2020 WL 409279 (S.D.N.Y. Jan. 24, 2020) ........................................................................10

*In re Hansainvest Hanseatische Investment-GmbH*,
    364 F.Supp.2d 243 (S.D.N.Y. 2018) ..........................................................................14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) .......................................................................1, 10, 13, 14

*Investment Vehicles v. KPMG, LLP*,
    789 F.3d 113 (2d Cir. 2015) ...........................................................................11

*Lancaster Factoring Co. Ltd. v. Mangone*,
    90 F.3d 38 (2d Cir. 1996) ........................................................................11, 14

*In re Mariani*,
    2020 WL 1887855 (S.D.N.Y. Apr. 16, 2020) .......................................................14

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) .....................................................................9, 10, 11

*In re Metallgesellschaft*,
    121 F.3d 77 (2d Cir.1997) ........................................................................10, 13

*In re Peruvian Sporting Goods S.A.C.*,
    2018 WL 7047645 (D. Mass. 2018) ...................................................................12

*In re Petition of Bloomfield Investment Resources Corp.*,
    No. 18-mc-2608, 2018 WL 6418421 (Dec. 6, 2018, S.D.N.Y.) ..........................................8

*In re Roz Trading Ltd.*,
    2007 WL 120844 (N.D. Ga. Jan. 11, 2007) .........................................................14

**Statutes**

28 U.S.C. § 1782 ................................................................................ *passim*

28 U.S.C. § 1782(a) ........................................................................1, 10, 13

**Other Authorities**

Federal Rule of Civil Procedure Rule 26 .......................................................1

Federal Rule of Civil Procedure Rule 45 .......................................................1

BlueBay Asset Management LLP, GML Capital LLP, IVO Capital LLP, Pala Assets Holdings Limited, RAI Investments PTE LTD., Sancta Capital Partners LP, Sandglass Opportunity Fund, LP, Sandglass Petrus Opportunity Fund, LP, and VR Global Partners, L.P. ("Applicants"), by their undersigned counsel, respectfully submit this memorandum of law in support of the their *ex parte* application ("Application") for an order pursuant to 28 U.S.C. § 1782(a) and Rules 26 and 45 of the Federal Rules of Civil Procedure authorizing the Applicants to conduct discovery in this district for use judicial proceedings currently pending in Italy and additional proceedings that are imminent and necessary.

## PRELIMINARY STATEMENT

Pursuant to 28 U.S.C. § 1782 ("Section 1782"), Applicants respectfully apply to this Court for an order to conduct discovery from respondent Fitch Ratings, Inc. ("Fitch"), a Delaware corporation with a principal place of business in this District, and Etihad Airways P.J.S.C. ("Etihad"), a public joint stock company established by Emiri Decree and incorporated in the Emirate of Abu Dhabi, United Arab Emirates, that also maintains a principle executive office in the District through which it conducts systematic and continuous business in New York.[1]

Section 1782 provides that "[t]he district court of the district in which a person resides or is found may order him to give testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  The requirements for issuance of a Section 1782 subpoena are minimal and generally subject to the court's discretion.  *See, e.g., Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 249, 264-56 (2004).

---

[1] The subpoenas that Applicants request to serve upon Fitch and Etihad are attached to the Declaration of Matthew J. Weldon dated June 16, 2020 ("Weldon Decl.") as Exhibit A and Exhibit B, respectively.

All of the requirements and discretionary factors are satisfied by this Application.  As to the requirements, Applicants seeks this discovery in aid of its enforcement of its rights against Alitalia and/or Etihad's affiliate EIHC in multiple proceedings in Italy, including currently pending insolvency proceedings in Italy, consisting of an "extraordinary administrative procedure" (a *amministrazione straordinaria delle grandi imprese in crisi*) and an action in the competent court of Civitavecchia (*Tribunale Civitavecchia*) (together, the "Italian Insolvency Proceedings"), and Respondents are found within this district.

Specifically, and as detailed below, Applicants form a Steering Committee of certain issuers of debt ("Issuers," as defined herein), and the discovery Applicants seek—disclosure of a Debt Assumption Agreement—is relevant to the enforcement of Applicants' rights and Issuers' rights in relation to the Italian Insolvency Proceedings and the default on the debt in which Applicants have an interest.  The Debt Assumption Agreement establishes the rights of the Issuers and, by extension, Applicants.  Without access to the Debt Assumption Agreement, Applicants cannot adequately protect their rights in the Italian Insolvency Proceedings or enforce their rights in a to-be-filed Italian proceeding (the Debt Assumption Agreement is governed by Italian law). Respondent Fitch conducts continuous and systematic business in New York through a principal place of business is in New York, New York, and is found in this District within the meaning of Section 1782.  Similarly, Respondent Etihad conducts continuous and systematic business in New York, New York, and is found in this District within the meaning of Section 1782.

As to the discretionary factors, the Respondents are not participants in the foreign proceedings, Italian courts are receptive to US federal-court judicial assistance, the request does not circumvent foreign proof gathering restrictions, and the request is not burdensome or duplicative.  Specifically, Applicants, via the Issuers (including through the guidance of the

Steering Committee), have requested the information from Alitalia and Etihad on multiple occasions, to no avail. Courts in this District have regularly issued Section 1782 subpoenas to assist Italian proceedings, and Italian courts have demonstrated a receptiveness to that assistance. Needless to say, Applicants' request for a single document already in Respondents' ready possession could not be less burdensome or intrusive.

## STATEMENT OF FACTS

### A.  The Notes, And The Alitalia Debt Acquired With The Proceeds From The Notes

Applicants or certain funds and/or accounts managed by them hold debt in the form of notes issued by two Dutch special purpose vehicle, namely EA Partners I B.V. ("EAP I") and EA Partners II B.V. ("EAP II") (EAP I and EAP II together the "Issuers"). EAP I issued a total of $700,000,000 6.875% notes due 2020 (the "EAP I Notes") and EA Partners II issued a total of $500,000,000 6.75% notes due 2021 (the "EAP II Notes") (collectively, the "Notes"). Declaration of Alain Nydegger dated June 16, 2020 ("Nydegger Decl."), ¶ 4.

The proceeds of the Notes were deployed through the Issuers to subscribe to certain debt issued by Alitalia. EAP I subscribed to the USD 131,922,000 6.31% bonds due September 28, 2020, and EAP II subscribed to the USD 99,500,000 6.31% bonds due June 1, 2021 (together, the "Alitalia Debt"). *Id*. at ¶ 5.

Applicants form an eight-member steering committee of holders of notes (the "Steering Committee"), which is actively engaged in a potential restructuring of the Notes prior to their maturity in September 2020 and June 2021 respectively, and evaluating, investigating and protecting the rights of the holders of the Notes and Issuers in relation to the Alitalia Debt. Through their interests in EAP I and EAP II, and organization of other noteholders, the Steering Committee, for the past year, has led the Issuers in restructuring efforts related to the Notes and

3

have successfully directed the Issuers through extraordinary meetings of Issuers to pursue claims on behalf of the Issuers.  *Id*. at ¶¶ 6-7.

**B.  <u>The Debt Assumption Agreement</u>**

Based on the Fitch Rating Commentary (discussed below) and other publicly available information, Applicants understand that the Alitalia Debt is the subject of an internal debt assumption agreement ("Debt Assumption Agreement") governed by Italian law between Alitalia and Etihad Investment Holding Company LLC ("EIHC"), an Etihad affiliate company.  *Id*. at ¶ 9.

The Debt Assumption Agreement was entered into in December 2016 as part of a recapitalisation effort by Alitalia to avoid becoming balance sheet-insolvent: in December 2016, an extraordinary shareholders' meeting of Alitalia authorized the issuance of a participating financial instrument (*Strumento Finanziario Partecipativo*), so called "quasi-equity" ("SPF"), according to Italian law for a total amount of USD 231,422,000 (i.e. equal to the total amount of the Alitalia Debt).  In the context of its subscription to the SPFs, EIHC entered into the Debt Assumption Agreement with Alitalia and assumed the obligations of Alitalia in respect of principal under the Alitalia Debt, thereby receiving the SPFs without making an actual cash contribution. *Id*. at ¶ 10.

**C.  <u>Alitalia's Insolvency Proceedings And Default On The Alitalia Debt</u>**

On May 2, 2017, Alitalia voluntarily petitioned the Italian Minister of Economic Development for commencement of an insolvency proceeding, which is known in Italy as the *amministrazione straordinaria delle grandi imprese in crisi* (i.e., the extraordinary administration procedure provided for large insolvent companies under the Italian law, similar to a US bankruptcy proceeding) (the "Italian Administrative Proceedings").  That same day, pursuant to a decree by the Italian Minister of Economic Development, Alitalia was admitted to the Alitalia Italian

Administrative Proceedings and directions were given regarding the submission of a plan for Alitalia's restructuring or liquidation of all or some of its assets.  *Id*. at ¶ 11.

Alitalia has defaulted on the Alitalia Debt and continues to be in default under its payment obligations thereunder.  *Id*. at ¶ 12.

### D. __The Fitch Credit Rating__

In May 2017, Fitch Ratings downgraded the senior secured rating of the Alitalia Debt to "CCC" from "B-" and "B" respectively, and issued a related rating commentary dated May 3, 2017, 10:19 ET (the "**Fitch Rating Commentary**").  *Id*. at ¶ 9.

The Fitch Ratings Commentary explained that the ratings downgrade came "after the filing for administration by Alitalia, one of the obligors under the transactions."  *Id.*  As part of the report, the Fitch Ratings Commentary acknowledged "the internal debt assumption by Etihad Investment Holding Company LLC, an affiliate of Etihad Airways PJSC," a company with an "A/Stable" rating.  *Id.*  While recognizing that the internal debt assumption "can provide additional default protection for the notes," the Fitch Ratings Commentary cautioned that "their mechanism is complicated and is subject to bondholder choices."  *Id.*

As to that complicated mechanism, the Fitch Ratings Commentary stated as follows:

> According to the internal debt assumption agreement between Alitalia and Etihad Investment Holding Company LLC, Etihad Investment Holding Company has agreed that it would assume Alitalia's repayment of principal on maturity for [the Notes].  This means that in case of Alitalia's default, Etihad will fund Alitalia's principal repayment only if bondholders choose to wait until the bonds mature. Therefore, the debt assumption agreement may incentivize the bondholders to wait until maturity rather than accept the unsuccessful outcome of the debt obligation remarketing, thus providing additional source of default risk protection for [the Notes].

*Id.*

**E.** **Applicant's Requests For The Debt Assumption Agreement Have Been Ignored**

Issuers never received a copy of the Debt Assumption Agreement, and instead learned of its existence via the Fitch Rating Commentary and discussions/notices related to the Alitalia Debt. As such, neither Applicants nor the Issuers have access to Debt Assumption Agreement.

Before filing this petition, Applicant and Issuers both requested the Debt Assumption Agreement, on multiple occasions, from both Etihad and Alitalia.  Those requests were ignored, and Applicants have been denied access to it.

**F.** **Applicant's Intended Use Of The Debt Assumption Agreement**

The Debt Assumption Agreement is relevant to Applicant's rights in the Italian Administrative Proceedings and other proceedings necessary to protect Applicants' rights arising out of the Notes and the use of the proceeds from those Notes, the Alitalia Debt.

Applicants, as members of the Steering Committee, have successfully guided the passage of extraordinary resolutions at noteholder meetings of each of EAP I and EAP II on May 13, 2020, authorizing the Issuers to file claims in the Insolvency Proceedings of Alitalia.  As such, the Issuers are now in a position to file such claims in the Insolvency Proceedings.  However, based on the Fitch Ratings Commentary, Applicants understand that the filing of claims would crystallize and trigger the payment obligations under the Debt Assumption Agreement.  *Id*. at ¶ 14.

Alternatively, under Italian law, the Alitalia Debt became deemed mature in May 2017 when Alitalia opened the insolvency.  The Debt Assumption Agreement articulates Etihad's obligations to all or certain of Alitalia's creditors in the event of Alitalia's default, and the Fitch Rating Commentary appears to interpret the Debt Assumption Agreement as establishing a direct payment obligation on behalf of Etihad to the Issuers.  If that interpretation is correct, Etihad is obligated to pay the principal of the Alitalia Debt.  The Debt Assumption Agreement would

provide the evidence and confirmation necessary for Applicants and Issuers to initiate a proceeding in Italy to pursue their rights under the Debt Assumption Agreement.

Further, if the Debt Assumption Agreement establishes a more nuanced relationship between Alitalia's default and Elitad's obligations, Applicants will use the Debt Assumption Agreement to understand and enforce its rights in the Italian Insolvency Proceedings.

In all cases, the Debt Assumption Agreement is directly relevant to Applicants' rights and claims.

## **ARGUMENT**

### A. **The Requested Discovery Meets The Statutory Requirements of 1782(a)**

Section 1782 provides in relevant part:

> The district court of the district in which a person resides or is found may order him to ... produce a document ... for use in a proceeding in a foreign or international tribunal ... upon the application of any interested person...

Section 1782 thus requires Applicants to establish that "(1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *In re Application of Chevron Corp.*, 709 F.Supp.2d 283, 290 (S.D.N.Y. 2010); *Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir.2012).

Courts within this District regularly grant Section 1782 applications for discovery from New York based entities, as well as their directors and officers, in aid of foreign investigations and proceedings, including criminal proceedings. *In re Dickson*, No. 20-mc-51, 2020 WL 550271, *1 (Feb. 4, 2020, S.D.N.Y.) (Abrams, J.) (granting Section 1782 application for corporate records of New York based entity in aid of a Cayman Island insolvency proceeding of the company's 99%

shareholder); *In re Petition of Bloomfield Investment Resources Corp.*, No. 18-mc-2608, 2018 WL 6418421 (Dec. 6, 2018, S.D.N.Y.) (Pollack, M.J.) (granting Section 1782 application to obtain discovery from New York based director of entity that had a controlling stake in a Russian company that was the defendant in a civil action pending in the Netherlands); *In re Application of Consellior SAS*, No. 16-mc-00400, 2017 WL 449770 *2 (Feb. 2, 2017, S.D.N.Y.) (Pauley III, J.) (authorizing the issuance of Section 1782 subpoenas for documents and deposition testimony of New York based corporate directors in aid of a French criminal proceeding).

Each statutory requirement is satisfied in here.

### i.    Respondents Are Found In This District

A corporation is "found" in the district where it conducts "systematic and continuous activities."  *See, e.g.,* Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1, 10 (1998) (Professor Hans Smit, the drafter of § 1782, explaining that insofar as the word "found" is applied to corporations, "it may safely be regarded as referring to judicial precedents that equate systematic and continuous local activities with presence.").  Courts have found this test to be satisfied where the corporation is subject to personal jurisdiction in the district.  *See, e.g., In re Application of Inversiones y Gasolinera Petroleas Valenzueala*, 2011 WL 181311, at *8 (S.D. Fla. Jan. 19, 2011) ("[S]ince it is undisputed that [Respondent] is subject to personal jurisdiction in this District by virtue of continuous and systematic activities, the undersigned concludes that [Respondent] is 'found' here within the meaning of Section 1782.") (internal citations omitted).

Respondent Fitch is found in this District because it conducts continuous and systematic business activities in New York through a principal place of business in New York, New York. *See* Weldon Decl., Exhibit C (business registration information with New York Department of State, including a principle executive office located at 33 Whitehall Street, New York, NY 10004)

and Exhibit D (Dun & Bradstreet profile identifying Fitch's dual headquarters in London and New York).  "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business."  *Daimler AG v. Bauman*, 571 U.S. 117 (2014).  Fitch thus can be "found" in this District within the meaning of Section 1782.

Etihad also conducts continuous and systematic business activities in New York through a principle place of business in New York, New York.  *See Id.*, Exhibit E (business registration information with New York Department of State, including a principle executive office at 40 Exchange Place, New York, NY 10005).  Accordingly, Etihad can also be "found" in this District within the meaning of Section 1782.  *See, e.g., In re Dickson,* 2020 WL 550271, at *1 (finding that petitioners met the statutory requirement that respondents were found in the district by avering that Respondents "conduct business in New York and maintain offices **or** their principal place of business in New York **or** are incorporated in New York") (emphasis added).

ii.     **The Discovery Sought Is "For Use" In Aid Of A Foreign Proceeding**

The Second Circuit has taken an expansive view of the "for use" requirement of Section 1782, and has emphasized that "an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success."  *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015).  Thus, provided the discovery sought is "something that will be employed with some advantage or serve some use in the proceeding," then "an applicant may satisfy the statute's 'for use' requirement even if the discovery [it] seeks is not necessary for [it] to succeed in the foreign proceeding."  *Id.* at 295, 298; *see also In re Accent Delight Int'l LTd.*, 869 F.3d 121 (2d Cir. 2018) ("The availability of Section 1782 discovery . . . is quite broad and only has broadened through successive amendments over the years.").  "The focus, therefore, is on the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign

tribunal." *In re Gorsoan*, 2020 WL 409279 (S.D.N.Y. Jan. 24, 2020) (citations omitted) (emphasis in original) (appeal docketed).

As noted above, the discovery Applicants seek is for use in active Italian Insolvency Proceedings as well as a contemplated foreign proceeding against Etihad/EIHC.   In both proceedings, Applicants will have the practical ability to place the Debt Assumption Agreement before the foreign tribunal.   There is no requirement that evidence sought in the United States pursuant to § 1782 be discoverable under the laws of the foreign country that is the locus of the underlying proceeding, and a district court may not refuse a request for discovery pursuant to § 1782 because a foreign tribunal has not yet had the opportunity to consider the discovery request. *See In re Metallgesellschaft*, 121 F.3d 77 (2d Cir.1997).

Moreover, "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings," but also includes "investigation[s] … of a criminal, civil, administrative, or other nature."   *Intel Corp.*, 542 U.S. at 258 (holding that the Commission of the European Communities charged with investigating alleged violations of the European Union's competition regulations qualified as a "foreign tribunal" under Section 1782).   Indeed, there is no requirement that an "adjudicative proceeding" be "pending" or "imminent," as Section 1782 "requires only that a dispositive ruling by the [investigating commission], reviewable by [the] courts, be within reasonable contemplation."   *Id*. at 259; *see also Deposit Insurance Agency v. Leontiev*, 2018 WL 3536083, at *4 (S.D.N.Y. July 23, 2018) (finding the statutory requirements met where the requested discovery was for use in a bankruptcy proceeding).

Moreover, the Second Circuit has interpreted *Intel* to mean merely that the materials sought should "be [for] us[e] at some stage of a foreign proceeding that was within reasonable contemplation at the time" of the application.   *Mees*, 793 F.3d at 301.   The "for use" requirement

does not mean that a requested document must be "necessary" for the prosecution of the foreign proceeding, and it is not even necessarily required that the foreign proceeding already be filed.  *Id*. Applicants' concrete plans to use the Debt Assumption Agreement to enforce their rights and the rights of the Issuers through the Steering Committee against Alitalia and/or EIHC satisfies the "for use" requirement.  *Id.*

In *Union Fenosa Gas SA v. Depository Trust Company*, the respondent challenged the petition by arguing that proceedings were speculative because the petitioner lacked the requisite information to commence the proceeding.  2020 WL 2793055, (S.D.N.Y. May 29, 2020).  Thus, Respondent argued, the petition was a fishing expedition that should be denied.  *Id.*  The court disagreed, noting that: 1) a different foreign proceeding was underway; and 2) "it is fully permissible for Section 1782 discovery to be used where the evidence obtained may be used at some stage of the foreign proceeding."  *Id.  Union Fenosa* is on all fours with this case.  Applicants will use the Debt Assumption Agreement in the Italian insolvency proceeding that is already underway and at some stage in an enforcement proceeding as appropriate.

### iii.     Applicant Is An Interested Party

As the Second Circuit recently opined, "an established *right* to provide evidence [to a claimant in a foreign proceeding] and have the party consider it, or a recognized relationship, such as that of an agent and principal, may be sufficient to make an otherwise stranger to the proceeding an 'interested person.'"  *Certain Funds, Accounts, and/or Investment Vehicles v. KPMG*, *LLP*, 789 F.3d 113 (2d Cir. 2015) (emphasis in original); *see also Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38 (2d Cir. 1996) (finding that the agent of a trustee was an interested person); *In re Fagan*, 2019 WL 8011742, at *3 (C.D. Cal. May 10, 2019) ("For an applicant to qualify as an 'interested person' under § 1782, the applicant need not be a litigant in the foreign proceeding. Rather, the applicant may qualify if he or she possesses a reasonable interest in obtaining judicial assistance.")

11

(citations omitted) (emphasis in original); *In re Children's Investment Fund Foundation (UK)*, 363 F. Supp. 3d 361 (S.D.N.Y. 2019) ("[A]lthough status as a party or criminal complainant is sufficient to satisfy the 'interested person' requirement, it is by no means necessary."); *In re Peruvian Sporting Goods S.A.C.*, 2018 WL 7047645 (D. Mass. 2018) (denying motion to quash Section 1782 subpoena even though Petitioners made clear that they were not parties to the foreign proceedings); *Akebia Technologies, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110 (9th Cir. 2015) ("An 'interested person' seeking to invoke the discovery mechanism set forth under § 1782 may include not only litigants before foreign or international tribunals, but also foreign and international officials as well as any other person whether he be designated by foreign law or international convention or merely possess a reasonable interest in obtaining [judicial] assistance.") (citations omitted); *In re Furstenberg Finance SAS*, 2016 WL 10707012 (S.D. Fla. July 27, 2016) (finding the petitioners to be interested parties despite respondents' challenge to petitioners' standing to assert claim in foreign litigation because "such a determination of Applicants' standing in a potential suit reaches further into the underlying merits of their claims than this court is required to contemplate under Section 1782, and the merits of their claims are not to be heard and decided before this Court") (citing *Application of Essos*, 101 F.3d 873 (2d Cir. 1996).

Here, Applicants are members of the Steering Committee appointed to enforce Issuers' rights in the Italian Insolvency Proceedings, and as regards the Notes generally, to protect their interests in the proceeds of the payments under the Debt Assumption Agreement.  Pursuant to that appointment, Applicants have an affirmative right to present information to the Issuers and to guide strategy in enforcing rights under the Notes.  Further, if Issuers fail to adequately protect their rights in the foreign proceedings, then Applicants will have a direct claim against Issuers.

**B.  The Discovery Sought Is Not Privileged**

The Debt Assumption Agreement was disclosed to Fitch, a third-party ratings agency, and some of the contents thereof were publicly disclosed.  Neither Fitch nor Etihad can colorably assert privilege in the document.

**C.  The Discretionary Factors Weigh In Favor Of Issuing Discovery**

Once all the elements of Section 1782(a) are met, requests for assistance should be liberally granted.  "[D]istrict courts must exercise their discretion under §1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts …." *In re Metallgesellschaft*, 121 F.3d at 79.

Courts consider four factors in exercising their discretion to grant a Section 1782(a) application: (1) whether the person from whom discovery is sought is a party in the foreign proceeding; (2) the character of the proceedings underway abroad and the receptivity of the foreign tribunal to federal court assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome.  *Intel Corp.*, 542 U.S. at 264-265.

Each of the discretionary *Intel* factors weighs in favor of granting this Application.

**i.    The Respondents Are Not Within The Foreign Court's Jurisdiction**

Because Respondent Fitch is not within the jurisdiction of the Italian Insolvency Proceedings or the contemplated proceeding against Etihad/EIHC, this factor unequivocally weighs in favor of discovery.  Likewise, Etihad is not a party to the Italian Insolvency Proceedings.

Accordingly, this discretionary factor weighs in favor of discovery.  *See, e.g., In re Roz Trading Ltd.*, 2007 WL 120844, at *2 (N.D. Ga. Jan. 11, 2007) ("Respondent is not a party to the arbitration, and on this ground alone the first *Intel* factor is satisfied.").

ii.   **The Foreign Tribunals Are Receptive To Federal Court Assistance Via Section 1782**

 Under this factor, courts consider whether a clear policy in the foreign jurisdiction are receptive to the use of discovery obtained in the United States.  *In re Euromepa S.A.*, 51 F.3d 1095, 1100 (2d Cir. 1995).   In this context, "receptive" is an inquiry into whether a foreign legal system would "reject evidence obtained with the aid of Section 1782."  *In re Application of OOO Promnefstroy*, 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009).   To show lack of receptivity, a party must provide "authoritative proof" that the foreign tribunal would affirmatively reject the evidence acquired via Section 1782.  *Id.*, at *7.  Absent such a conflicting policy, assistance under Section 1782 is appropriate.  *In re Euromepa*, 51 F.3d at 1100.

There is no such conflicting policy in the Italian legal system.  *See, e.g., In re Mariani*, 2020 WL 1887855 (S.D.N.Y. Apr. 16, 2020) (granting Section 1782 discovery for use in an Italian divorce proceeding); *Lancaster*, 90 F.3d at 39 (affirming Section 1782 discovery for use in Italian insolvency proceeding).

iii.   **The Application Does Not Circumvent Foreign Proof-Gathering Restrictions**

Under the third factor, courts consider whether there are any restrictions under the law of the foreign tribunal against the collection of evidence abroad.  *See Promnefstroy*, 2009 WL 3335608.  However, "nothing in the text of [Section] 1782 limits a district court's production order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there."  *Intel Corp.*, 542 U.S. at 260-263.  The appropriate inquiry under this third *Intel* factor is whether the Applicants are pursuing Section 1782 discovery in good faith.  *See In*

14

*re Hansainvest Hanseatische Investment-GmbH*, 364 F.Supp.2d 243, 251 (S.D.N.Y. 2018) ("to demonstrate circumvention, Respondents must illustrate … that Applicants are engaged in a bad faith endeavor to misuse Section 1782"). "Section 1782 contains neither a foreign-discoverability nor an exhaustion requirement, and such requirements would seem to undermine the statute's very purpose." *Id.* Nothing in Italian law prohibits this type of discovery. Applicants in good faith seek permission to obtain limited discovery directly related to the core issues.

### iv.      The Requested Discovery Is Not Unduly Burdensome

Applicants seek a single document that is already in Respondents' possession, custody or control. As it is difficult to envision a less burdensome request, this factor weighs in favor of granting the Application.

Moreover, even if requested discovery in a Section 1782 Application were determined to the unduly burdensome it is "far preferable for a district court … [to issue] a closely tailored discovery order rather than by simply denying relief outright." *In re Euromepa S.A.*, 51 F.3d at 1101; *In re Application of Consellior SAS*, 2017 WL 449770 *2. To the extent that the subpoena was not as narrowly tailored as possible, the appropriate relief would be to tailor the discovery via a restrictive order rather than denying relief outright.

### CONCLUSION

For the reasons stated above, this requests clearly satisfies the statutory requirements, and is an equitable and efficient means to assist parties in relation to legal proceedings abroad. Not only are the statutory requirements satisfied, but the discretionary factors also weigh in favor of the Court granting the Applicants' request for discovery.

Dated:   New York, New York                    Respectfully submitted,
         June 16, 2020

                                      By:    /s/ Matthew J. Weldon
                                             Matthew J. Weldon
                                             Luke E. Steinberger
                                             K&L GATES LLP
                                             599 Lexington Avenue
                                             New York, NY 10022
                                             T: (212) 536-3900
                                             F: (212) 536-3901
                                             Matthew.Weldon@klgates.com
                                             Luke.Steinberger@klgates.com

                                             *Attorneys for Petitioners*
                                             *BlueBay Asset Management*
                                             *LLP, GML Capital LLP, IVO*
                                             *Capital LLP, Pala Assets*
                                             *Holdings Limited, RAI*
                                             *Investments PTE LTD., Sancta*
                                             *Capital Partners LP, Sandglass*
                                             *Opportunity Fund, LP,*
                                             *Sandglass Petrus Opportunity*
                                             *Fund, LP, and VR Global*
                                             *Partners, L.P.*

16